Joseph D. Quinn, Jr., J.
Defendant has been indicted on one count of criminal sale of a controlled substance in the second degree, in violation of subdivision 3 of section 220.41 of the Penal Law, on one count of criminal possession of a controlled substance in the second degree, in violation of subdivision 3 of section 220.18 of the Penal Law, and on one count of crimi *558 nal possession of a controlled substance in the sixth degree, in violation of subdivision 1 of section 220.06 of the Penal Law. The indictment charges that each of these offenses was committed on May 14, 1974. It is claimed in that pleading that the illicit substance involved in each instance was the stimulant amphetamine.
Under New York’s revised drug laws, which became effective on September 1, 1973, each of the first two crimes charged is classified as an A-II felony, and the third is graded as a Class D felony.
Prior to the commencement of this action, and in 1969, defendant was convicted of burglary in Connecticut and was imprisoned there under a sentence for a minimum term of three years and a maximum term of five years. In 1971, defendant, after being convicted of burglary in the third degree in New York, was imprisoned under a sentence in which the maximum term was fixed at four years and no minimuimterm was imposed.
Earlier in this action, defendant brought on an omnibus motion seeking varied relief. In the fifth branch of that application, he challenged the constitutionality of section 70.06 of the Penal Law and CPL 220.10 (subd. 6, par. [b]) insofar as those sections apply to him as a second felony offender, upon the grounds that they violate his “ [rlights under both the New York and United States Constitutions relative to ex post facto laws, double jeopardy, due process, equal protection and cruel and unusual punishment.” In the sixth branch, he attacked the constitutionality of sections 220.06, 220.18 and 220.41 of the Penal Law, upon the grounds “ [t]hat the penalties imposed by said statutes constitute cruel and unusual punishment and deny defendant due process and equal protection of law. ’ ’
In an order entered on September 12, 1974, this court held determination of those branches in abeyance, directing, sua sponte, that the Attorney-General be first brought in under the provisions of section 71 of the Executive Law to defend the constitutionality of the several areas of the Penal Law and the CPL which had been subjected to attack. Since then, the Attorney-General has intervened, the constitutional questions presented here have been briefed and argued by the Attorney-General and the District Attorney, and the remaining branches of the motion have been decided.
In undertaking the chore of ruling upon the constitutionality of the various statutory sections assailed here, we turn initially to examine defendant’s contention as to the invalidity of sections 220:06, 220.18 and 220.41 of the Penal Law.
*559 The trouble with this claim is that, in spite of the burden of demonstrating invalidity beyond a reasonable doubt which is the lot of all who would have the courts strike down legislation on constitutional grounds (People v. Pagnotta, 25 N Y 2d 333, 337), defendant has precious little to say about what he thinks are the shortcomings in these protested sections. Beyond proffering the unadorned statement in his notice of motion and demand for relief to the effect that the punishments prescribed for the drug crimes classified in the respective sections do violence to his due process and equal protection rights under the Fourteenth Amendment of the Federal Constitution and that they are inconsistent with the Eighth Amendment proscription against the imposition of cruel and unusual punishments, he has not lifted one finger to substantiate or even elaborate on his claim of constitutional infirmity in this respect. This is so, despite the fact that he was given the opportunity to submit a brief and to participate in oral argument.
In his brief and on oral argument, the District Attorney complained, and rightly so, of defendant’s failure to spell out the premises upon which he relied.
Even so, defense counsel appeared when argument was heard, and, although he elected not to argue, he did inform the court that, insofar as the attack on sections 220.06, 220.18 and 220.41 of the Penal Law was concerned, he relied upon the same grounds urged in support of1 the attack upon the constitutionality of subdivision 1 of section 220.16 and subdivision 1 of section 220.39 of the Penal Law in People v. Gardner (78 Misc 2d 744), which we recently decided. To give defendant at bar every benefit of the doubt, and to preserve his point for appeal, we accommodate him to the extent of allowing him to incorporate the Gardner arguments here. Of course, we reject those same arguments on the same basis that we did in that case.
Defendant’s second challenge has as its target the constitutionality of section 70.06 of the Penal Law, the second felony offender statute.
Effectively, section 70.06, which became law on September 1, 1973 (L. 1973, ch. 277, § 9, as amd. by L. 1973, ch. 278, § 8 and L. 1973, ch. 1051, § 3), dictates increased 'State prison sentences for persons convicted of a felony, other than a Class A felony, in New York if, within 10 years prior to commission of the present offense, they have been subjected to conviction for a felony in New York or, in any other jurisdiction, for an offense for which a sentence to a term of imprisonment in excess of one year was imposable, regardless of whether such sentence of *560 imprisonment was actually imposed. (Penal Law, § 70.06, subd. 1, par. [b], cl. [i].)
As has been noted earlier, defendant has a prior felony conviction in New York and a prior conviction in Connecticut for which a sentence of three to five years was imposed. He is presently charged with the commission of two Class A-II felonies and one Class D felony in this jurisdiction.
Under the new statute which he attacks, he has no exposure to increased punishment by reason of either of his predicate felony convictions if he is convicted under either or both of the A counts of the indictment which has been found against him, since the section has no application to current A felony convictions. However, if he is convicted under the third or D count, or, if he is convicted of lesser included.felonies, graded at a crime classification lower than A, under one or both of the first two counts, he must be subjected to second felony offender treatment for the present offenses.
Defendant’s second challenge is- hardly better mounted than his first one. Inasmuch as it amounts to a general attack on the theory of recidivist statutes, whereby additional punishment is inflibted upon habitual and repeated offenders, there is more than ample precedent to sustain the validity of enactments under that ancient concept. (Cf. People v. Starks, 78 Misc 2d 87; Rosenblatt, New York’s New Drug Laws and Sentencing Statutes [1973], ch. 6, p. 51 et seq.) There is no need to belabor the point further here.
As a matter of fact, it would appear that defendant does not gerióusly question the soundness of section 70.06 in terms of his New York predicate. His entire assault seems to be postulated in terms of the use of his Connecticut conviction as a predicate. Any doubt that this was the case was removed when, at the time of argument, defense counsel informed the court that he bottomed his challenge to the statute squarely upon Mr. Justice Burton Roberts’ recent opinion in People v. Mazzie (78 Misc 2d 1014). In Mazzie, Justice Roberts held that the application of section 70.06 is unconstitutional when a foreign predicate conviction was for an offense which would not have been a felony under New York law. Although there is no indication here that defendant intends to dispute his New York predicate, even the (X possibility of collateral consequences ” of the Connecticut conviction overcomes any issue of mootness which might otherwise arise here insofar as the attack on the constitutionality of section 70.06 is concerned. (Cf. Mancusi v. Stubbs, 408 U. S. 204, 206-207; Marple v. Manson, 373 F. Supp. 757, 759-762.)
*561 Moreover, this court cannot bring itself to follow the holding in Mazzie, and since it would seem that the decision there might be viewed by some as having application to some areas of the persistent felony offender law (Penal Law, § 70.10); Mazzie, supra, p. 1016, n. 1), and since defendant, if convicted under the instant indictment, might be subjected to treatment under that latter statute, we will proceed to dispose of the issue of the validity of the provisions of section 70.06 which deal with foreign predicate convictions.
It is evident from even a cursory reading of the Mazzie decision that Justice Egberts had no quarrel with the theory of recidivist statutes. He conceded that ‘ ‘ the multiple felony offender provisions of sections 1941 and 1942 of the former Penal Law, which were not adopted in the revised Penal Law (of 1967), were consistently held/to not be violative of any constitutional rights ” and he acknowledged that “ [sjerious recidivism is clearly a proper 'basis for increased penalties.” But, he pointed out that “ [t]hese earlier statutes, however, required that in order for a prior conviction to constitute a predicate felony for purposes of punishment, it had to be for a crime ‘ which, if committed within this state, would be [a felony] ’ ”, and he observed that the “ offender’s prior conduct was thus measured against New' York standards of behavior.” (People v. Mazzie, 78 Misc 2d 1014, 1016 supra.)
In so remarking, Judge Egberts obviously had reference to the so-called Olah rule enunciated by the New York Court of Appeals in 1949 in construing section 1941 of the former Penal Law. (Cf. People v. Olah, 300 N. Y. 96.) The doctrine of Olah was to the effect that, under section 1941, a prior conviction in another jurisdiction did not amount to a predicate unless the foreign statute could not be violated without the resulting commission of the equivalent of a felony in New York. Under the test devised by the majority in Olah the court did not look behind the foreign statute to inquire into the acts of the accused in the other State, but merely measured the foreign statute against ours. A prior, out-ofiState felony conviction could not be utilized as a predicate here if the foreign statute could, by its terms, be violated without the commission of the equivalent of a New York felony, even though the affected defendant, by his very conduct, did commit the counterpart of a New York felony.
Comparing the old law formulation and the rule of Olah to our new second felony offender section, Judge Egberts noted that (p. 1016) “ [t]he new provision contains no such relationship to the legislation of this State. It makes a predicate felony *562 of1 a conviction for any act for which the Legislature of any jurisdiction has seen fit to authorize a possible maximum sentence of imprisonment of more than one year, regardless of the actual sentence imposed and regardless of whether the prior offense would have been considered a serious crime — or any crime at all — in New York.”
In this perspective, Judge Roberts perceived that the challenge to the constitutionality of section 70.06 which was before him, brought by an accused who had been earlier convicted in a Federal jurisdiction and there incarcerated for seven years for an offense which would be a misdemeanor here, posed two essential questions, (1) (p. 1016) “whether the statute in question can properly rely upon the laws of other jurisdictions to specify conduct which must be considered in this State to be the basis for the mandatory imposition of increased punishment for a [subsequent] New York offense ”, and (2) (p. 1018) “whether a multiple offender statute may properly treat individuals who have engaged in the same predicate criminal conduct in different jurisdictions or in overlapping State and Federal jurisdictions differently, solely on the basis of the punishment prescribed for the conduct by the laws of [the] prosecuting jurisdiction [without'offending the Equal Protection Clause].”
The learned Justice answered .both of these questions in the negative and, in so doing, threw the disputed section out on several grounds.
Firstly, says the Mazzie holding, the references in section 70.06 of the Penal Law to crime classification and penalty standards of other jurisdictions violate sections 1 and 16 of article III of the New York Constitution, in that they represent (1) an improper delegation of the lawmaking power of our Legislature to the legislative bodies of other jurisdictions, and (2) an illegal incorporation by reference of the laws of those jurisdictions into a domestic enactment. Secondly, Mazzie holds that the section’s utilization of1 foreign punishment standards violates the equal protection clause in that (p. 1019) “ the identity of the prosecutor is what is permitted to determine the effect of the predicate conviction under the statute”, and in that (p. 1019) “blind reliance on a prescribed statutory maximum sentence is simply irrational and bears little relationship to the statutory objective of section 70.06, which is to increase punishment for 1 hard-core ’ offenders.”
Turning initially to the contention that the disputed section violates New York’s constitutional rule prohibiting delegation of the legislative function, we note that section 1 of article III *563 of the Hew York Constitution provides crisply that “ the legislative power of this state shall be vested in the senate and assembly.”
This quoted clause was never designed to prevent the Hew York Legislature from allowing our courts, in punishing criminals, to consider offenders’ prior records in other jurisdictions, merely for the reason that the penal statutes under which the offenders were convicted in those jurisdictions were not enacted in Hew York. More accurately, the clause was adopted to insure a representative form of government in this State and to prohibit the Legislature ‘ ‘ from converting * * * [the government] into a pure democracy, under which the people frame and enact their own laws.” (Cf. Stanton v. Board of Supervisors of County of Essex, 191 N. Y. 428, 431-432.)
Before Massie, this section has never been invoked to prohibit this State from judging its felons, in part, on their history of lawlessness beyond our borders. Subject to the restrictions of due process to be found in its own Constitution and that of the United States, the Hew York Legislature may “ make acts criminal which before were innocent, and ordain punishment in future cases where before none could have been inflicted. This, in its nature, is a legislative power, which, by the Constitution of the state, is committed to the discretion of the legislative body. (Barker v. People, 3 Cow. 686; People v. West, 106 N. Y. 293.) ” (Lawton v. Steele, 119 N. Y. 226, 232-233, affd. 152 U. S. 133.)
Thus, in repealing the Oláh statute with its definition of a predicate conviction and in substituting section 70.06 of the Penal Law in its place, the Hew York Legislature properly let it be known that persons previously convicted in other jurisdictions of crimes, which carried with them sentences to a term of imprisonment in excess of one year, were to be subjected to mandatory increased punishment if they were later convicted in this State. To be sure, this enactment, to a degree, defines predicates in terms of foreign convictions. But this aspect of it is hardly tantamount to a proscribed delegation of the lawmaking power to foreign legislative bodies. Realistically viewed, it amounts to no more than an application of the Hew York definition of a felony to crimes in other jurisdictions. (Cf. Penal Law, § 10.00 subd. 5.) Heither does it amount to defining Hew York offenses by applying foreign statutes, nor to defining new crimes in Hew York.
Dealing with the subject of unlawful incorporation in legislative acts, section 16 of article III of the Hew York Constitution prescribes that “no act shall be passed which shall provide that *564 -any existing law, or any part thereof, shall he made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act. ’ ’
Having an earlier and differently numbered though identically worded version of the foregoing cited section in mind, the New York Court of Appeals, in People ex rel. Commissioners of Washington Park v. Banks (67 N. Y. 568, 575-576), divined the meaning and intent of this section when it stated that “ the evil in view in adopting this provision of the Constitution, was the incorporating into acts of the legislature by reference to other statutes, of clauses and provisions of which the legislators might be ignorant, and which affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law, which would, not receive the sanction of the legislature if fully understood.” (Cf. People ex rel. New York Elec. Lines Co. v. Squire, 107 N. Y. 593, 602; People ex rel. Everson v. Lorillard, 135 N. Y. 285, 289; People v. Mailman, 182 Misc. 870, affd. 293 N. Y. 887.)
This “ constitutional provision intended to operate as a restraint upon the legislature, with respect to the language and forms of expression to be used in framing acts of legislation, is not to be construed as to embrace cases not fairly within its general purpose or policy, or the evils which it was intended to correct, though they may be within its letter.” (People ex rel. Everson v. Lorillard, supra, p. 288.)
The mere mention of foreign convictions and imprisonments in section 70.06 of the Penal Law does not contravene section 16 of article IH of our Constitution by making the criminal laws of other jurisdictions a part of that section. This reference does no more than to declare New York’s policy to provide enhanced punishment upon proof of such foreign predicates for offenders later convicted in this State.
Nor is there anything repugnant to the Federal or New York Constitutions in a legislative act, such as section 70.06, which defines predicates in terms of sentences "of imprisonment which were or which might have been imposed in other jurisdictions in consequence of those convictions. (Cf. McDonald v. Massachusetts, 180 U. S. 311, 312-313; Graham v. West Virginia, 224 U. S. 616; Gryger v. Burke, 334 U. S. 728; Oyler v. Boles, 368 U. S. 448; Marshall v. United States, 414 U. S. 417; People v. Wilson, 13 N Y 2d 277, 281.)
• In this connection, it should be noted that the Olah rule, upon which Judge Roberts leaned so heavily in Massie, cannot be *565 fairly said to have been constitutionally dictated. The Olah court emphasized that, rather than treating with a question of constitutional dimension, it was concerned only with the meaning of a tightly worded statute.
Writing for the majority in that case and referring to New York’s former statutory definition of a predicate felony, Judge Fuld remarked that:
“ A statute must be construed and applied as it is written by the Legislature, not as some judges may believe it should have been written. (See Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 639.) As it now reads, section 1941 of the Penal Law does not provide that a defendant should be treated as a second felony offender if he did something in another State which might furnish the basis for a felony prosecution in New York or — relating the problem to larceny cases — if he stole an amount which might justify a prosecution for grand larceny in this State. The Legislature, if it is so minded, may amend the statute and make a defendant’s second or fourth 'offender status depend upon some other Criterion thorn the f crime ’ of which he was convicted, but until the Legislature does so, the prosecutors and the courts in this State must consider and look only to that ( crime (People v. Olah, 300 N. Y. 96, 102, supra, emphasis supplied.)
With respect to the equal protection arguments which found favor with Mr. Justice Roberts in Mazzie (78 Misc 2d 1014, 1015), and particularly that phase of those arguments involving the contention that section 70.06 violates the equal protection clause for the reason that it “improperly treats those convicted in other jurisdictions more harshly than it treats persons cpnvicted in New York State courts for the same conduct,” it is interesting to note that, in the Marshall case (supra), the United States Supreme Court sustained the constitutionality of a Federal act which provided for incarceration rather than rehabilitative civil commitment for any offender ‘ ‘ who has been convicted of a felony on two or more prior occasions ” (U. S. Code, tit. 18, § 4251, subd. [f], par. [4]) and which defines the term “ felony ” to include “‘[a]ny offense in violation of a law of any State, any possession or territory of the United States, the District of Columbia, the Canal Zone, or the Commonwealth of Puerto Rico, which at the time of the offense was classified as a felony by the law of the place where the offense was committed ”. (Marshall v. United States, 414 U. S. 417, 419, n. 1.)
In upholding this Federal statute, the majority of the Marshall court necessarily rejected the dissent’s equal protection argu *566 ments regarding the variance in felony standards from State to State. (Marshall, supra p. 419, n. 1.)
It would seem that neither the majority nor the dissent in Marshall ever perceived that the Congress, in enacting the two felony exclusion rule which utilized State felonies as predicates, had unlawfully delegated its legislative function to the States.
Be this as it may, it is difficult to see how the Marshall and the Massie cases can abide one another.
There is one other facet of the Maszie opinion which invites comment. That is the apprehension voiced by Justice Roberts that such offenses as “ fornication in Alabama “ seduction in Texas”, “blasphemy in New Jersey ”, “vagrancy in Rhode Island ”, “ stealing a library book in North Carolina ”, “or a turkey in Arkansas ” {Mamie, supra, p. 1018), all carrying penalties of more than one year’s imprisonment in their home States, could serve as predicates in New York under section 70.06 of the Penal Law. His alarm over such a result is justifiable.
But we think that there is a remedy in New York for persons confronted with such anomalistic and anachronistic predicates. It is our feeling that this remedy is made available to defendants under the procedure prescribed in CPL 400.21 which governs the determination of second felony offender status.
Pertinent here is the language of paragraph (b) of subdivision 7 of that section which states in part that “ a previous conviction-in * * * any other jurisdiction which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United ¡States must not be counted in determining whether the defendant has been subjected to a predicate felony conviction.”
3h our view, it is absurd to think that an individual, who, for example, had been convicted under the Virginia antimiscegenation statutes before they were stricken down in 1967 (Loving v. Virginia, 388 U. S. 1), could not successfully invoke his due process and equal protection rights in a CPL 400.21 hearing and, in that fashion, obtained a dismissal of a second felony information filed against him for such an alleged predicate. Even in the absence of a specific provision for such an attack, a defendant should not be denied a forum in New York to vindicate his constitutional rights with respect to an out-of-State conviction. (Cf. People v. Wilson, 13 N Y 2d 277, 281-282.)
CPL 220.10 (subd. 6, par. [b]) is the target of defendant’s last constitutional challenge. That section and subdivision foreclose an indicted defendant of the right to plead guilty to any lesser offense than a felony ‘ ‘ where the indictment charges a *567 felony and it appears that the defendant has previously been subjected to a predicate felony conviction as defined in penal law section 70.06”.
To our way of thinking, this piece of legislation represents a proper exercise of the Legislature’s right to reasonably restrict the right of any class of defendants to plead to reduced, criminal charges. Defendant’s attack on it is rejected upon the same general theory that a similar claim against the validity of the companion clause, CPL 220.10 (subd. 6, par. [a]) was turned aside in People v. Gardner (78 Misc 2d 744, 753-755, supra).
Accordingly, the fifth and sixth branches of defendant’s omnibus motion are denied in their entirety.